JohNstoN, Ch.
delivered the opinion of the Court.
This Court concurs in so much of the decree as is brought before us by the first ground of appeal.
Adultery is familiarly known, in law, as the illicit intercourse of two persons, one of whom, at least, is married ; and we must understand the word to have been employed in this sense in the Statute of 1795, unless there is something in the context to shew that it was used with a different signification.
Where the words of a Statute, in their primary meaning, do not expressly embrace the case before the Court, and there is nothing in the context to attach a different meaning to them, capable of expressly embracing it; the Court cannot extend the Statute, by construction.-to that case, unless it falls so clearly within the reasons of the enactment as to warrant *188 the assumption that it was not specifically enumerated among those described by the Legislature, only because it may have "been deemed unnecessary to do so.
Where the general intention of the Statute embraces the specific case, though it be not enumerated, the Statute may, nevertheless, be applied to it by an equitable construction, in promotion of the evident design of the Legislature. But where this is done,- it is always presupposed that such a case was within their genéral contemplation, or purview, when the Statute was enacted by them: for if the case be omitted in the Statute because not foreseen or contemplated, it is a casus omissus, and the Court, having no legislative power, cannot supply the defects of the enactment.
Nothing in the context of the Statute of 1795 has struck us as indicating that the word adultery was not employed in its primary legal signification ; and the case before us is a casus omissus, unless it can be brought within the reasons of the Statute.
In considering the Act, with reference to its general intention, it must be remembered that there are few rights more valued by the citizen, or more uniformly respected by the Legislature, (of which we have abundant evidence in this very Statute) than the Jus disponendi: and no construction in abridgment of this right, can be conformable to the spirit and intent of the Act, except where the abridgment arises necessarily from the application of the Act to the cases which it déscribes, or becomes necessary in carrying its provisions into effect, as provisions of a remedial Statitte.
The general scope and intention of this Act are very evident. Its provisions were intended, (so far as the Legislature could safely interpose for that purpose) to prevent a man who had forgotten his domestic duties, from squandering his property upon the object of his perverted affections, to the wrong and injury of his family; and by depriving him of the means of rewarding the associates of his vitiated appetites, or providing for their progeny, to discourage both him and them from entering into such immoral and pernicious con-nexions.
The persons upon whom his bounties were to be squandered were his mistress and his bastard children. The latter he could not legitimate, and therefore there was no difficulty in framing an enactment to meet their case. The mistress presented a very different case, requiring the utmost attention in constructing provisions not likely to be eluded. If we duly consider the difficulties to be encountered and overcome, we shall probably perceive why it was that the Legislature confined its enactment to the case of adultery. It was because it could not have effectually legislated for any other case of a kept mistress, without exercising a degree of rigor for which *189 it was not prepared ; and which, if exercised, would, probably, have resulted in evils fully as intolerable as those which it sought to suppress, if not far more intolerable.
If the man had a wife, or the mistress a husband, this presented a case of adultery, for which provision could be made, incapable of being evaded. There was no possibility of legitimating the connexion, while either the wife of the one or the husband of the other lived ; and while these relations existed, the objectionable gift could not be made.
But in the case of a widower, living with a single woman, (the case before us, and to which it is contended the Statute applies,) no effectual prohibition could well be enacted, and, therefore, probably none was intended, although the Legislature may have felt the strongest disposition to protect the children of the former from improvident gifts made by their father to his mistress, at their expense.' It may have occurred to the Legislature that a woman who has such control over a man as to induce him to bring his motherless children to beggary, by giving his whole estate to her, has, in all human probability, sufficient influence to induce him to make her his wife, as a means of giving efficacy to the gift. What legislation could have prevented this, short of declaring that no man having children, shall bring to a second marriage more than one-fourth of his property ? or, that he shall not give to, or settle upon a second wife more than that proportion ? or that if he marry a woman with whom he has had illicit con-nexion, such inhibition shall exist? But from what appears in the Statute, no intention to interfere with the^'ws disponen-di, to the extent required by the two first cases supposed, can reasonably be ascribed to the Legislature; nor would such interference be required either by public policy or morality. The third alternative could not have been adopted without subjecting the parties to every second marriage, to investigations of most scandalous and immoral tendency, at the instance of the husband’s children. Such consequences could not be. tolerated, and may have induced the Legislature to confine themselves to cases of adultery, by producing a conviction that they could not safely provide for any other.
2. The second question raised by the appeal, is what is the quantity of estate conferred by the will of Hull on his natural daughter Mrs. Bryan?
In the judgment of the Court, she took a fee-conditional in the real estate, and a life estate in the personalty.
The property is given “ in trust for the said Zulina, during her natural life, and upon her demise, then, the said property is to go to the heirs of her body, if any.” “ Should she die without issue, but having a husband, then to the husband,” &c. But should she “ die without leaving issue or husband,” then over to a public school.
Vide 4 Kent 214. WUlslíir ch 36.
2Jarm. 244, 201, 253.
Ib. 246.
1 Rich. Eq. 404.
Ib. 411.
By the rule in Shelly's case, these words give Zulina a fee* conditional in the real estate devised to her. This rule is that where an estate of freehold, legal or equitable, is limited to a person, and the same instrument contains a limitation of the same legal or equitable character, either mediate or immediate, to his heirs, or the heirs of his body, the word heirs is a word of limitation, i. e. the ancestor takes the whole estate comprised in this term. Thus, if the limitation be to the heirs °f ^s he taiies a fee-conditional; if tohis heirs general, a fee simple.
It is not necessary in this case to observe, that when the limitation is of an equitable nature, or in trust, the rule does not operate, if the trust be executory, as where the trustee has some act to perform in regard to the tenant for life, or where the objects take not immediately under the trust, but by means of some further act to be done by a third person, usually him in whom the legal estate is vested.
The trust in this case is what is denominated an executed trust; and the rule applies in such case, equally as if the interests were purely legal.
The rule is a rule of property, and not of construction : that is, if the terms of the instrument make a case which falls within its operation, it will operate notwithstanding a persuasion may exist that such was not the intention of the grantor or testator. The general intention of the law must prevail over his particular intention. If the remainder-men can take as heirs, they shall not take as purchasers but as heirs : and the inheritance shall be annexed to the interest of the first taker. And “ so strong is the rule that words, however positive, expressly negativing the continuance of the ancestor’s estate beyond the period of its primary express limitation, will not exclude it.”
These doctrines are undoubted; and it only remains to apply them to this case ; and we need go no further than our own case of Whitworth v. Stuckey, for a precedent. The devise in that case was of lands to a son, for life, and, at his death, to the lawful issue of his body. And it was held that the limitation to the issue served only to enlarge the son’s estate to a fee-conditiona.1.
In that case there was a limitation over, in case of the son’s dying without lawful issue living at'the time of his death ; but it was held that this did not restrict the son to a life estate, nor enable the issue to take as purchasers : and very properly; because, as we have seen, if it had been the positive and express intention of the testator that the son should take a life estate, and no more, the issue would still have taken as heirs, and the law would have annexed their estate to his.
If, therefore, the limitation over, in the case before us, were good, as to real estate, it could have no influence in excluding the rule in Shelly’s case.
4g|'no^llls
ep‘
Ib- i6i‘
Indeed, it would be extraordinary if an intention to limit over upon a contingency, at the expiration of the life estate, should have an effect to change the character of that estate and the ensuing limitation to the heirs ; when, according to the authorities, the direct and express interpolation of an intermediate estate between them, would have had no such effect.
“ If A, by will or otherwise,” says an elementary writer, “has an estate of freehold limited to him, and the same instrument contains a subsequent limitation to his right heirs, or to the heirs of his body, after some other estate for life, or in tail, interposed between such limitation of the first estate to him, and such subsequent limitation to his heirs, or heirs in tail, this remainder to the heirs, or heirs of the body of A., vests in A, as a remainder; and is transmitted through him, by descent, as from ancestor to heir. The general rule is this; that whenever the ancestor takes an estate of freehold, whether it be, or not, such as may determine in his lifetime, and there is afterwards, in the same conveyance, an unconditional limitation to his right heirs in tail, (either immediately, and without the intervention of any mean estate of freehold between his freehold and the subsequent limitation to his heirs, or mediately, that is, with the interposition of such mean estate,) there such subsequent limitation to the heirs, or heirs in tail, vests immediately in the ancestor, and does not remain in contingency, or abeyance; with this distinction : that where such subsequent limitation is immediate, it then becomes executed in the ancestor,forming, by its union with his particular freehold, one estate of inheritance in possession; but when such limitation is mediate, it is then a remainder vested in the ancestor who takes the freehold, not to be executed in possession, till the determination of the preceding mean estates. As, if there be an estate to A. for his life,” “ remainder to the heirs of the body of A: this is an estate tail, executed in possession in A: but if there be an estate to A. for his life,” “ remainder to B. for life, remainder to the heirs of the body of A., this is only a present freehold in A. with a vested remainder to him in tail, to take effect in possession, after the determination of estate.”
The same author also states the effect, when the intermediate estate is suspended upon a contingency: and refers to Bowles' case. “ The two limitations” says he, “ are united and executed in the ancestor until such time as the intervening limitations become vested; and then open and become separated, in order to let in such intervening limitations as they arise.”
I have said that if the limitation over were good, it could not prevent the application of the rule.
But the limitation over, in this case, is clearly void, as to *192 the real estate, according to the case of Mazych v. Vanderehorst following the case of Forth v. Chapman. In the former case, where real and personal property were devised, in. the same clause, to A. and the heirs of her body, forever, but if she should die leaving no lawful heir or heirs of her body, then over ; it was held that the limitation over was g°od as t0 the personalty, but too remote, and therefore void, as to the real estate. Upon the principle of that case, the limitation over, in the case before us, is deprived, by remoteness, of any possible influence to convert the direct gift to the issue into an estate by purchase.
* ®yyf Isaf
l H'll Ch 265 1 ' '
Mjb’291 °k’
4 Speers Eq.i.
The effect, is different, however, as to the personalty. The case just referred to shews that the word leaving makes the limitation over, in respect to this species of property, valid: and then, the cases determined in this State upon Bell’s will, have laid down the rule, that when, as in this case, there is a direct limitation to issue, or heirs of the body, and then a valid limitation over in default of issue, the issue take as purchasers:
The consequence of these doctrines is that Zulina takes a fee-conditional in the real estate given to her by the will of the testator, and a life estate in the personalty, with remainder to her issue.
With respect to the real estate, the decision in Adams v. Chaplin, is that the fee vested in her from the time the will took effect. According to that case there was no estate appreciable in law left in the testator. Her estate was not, as had been supposed in Tinny v. Tinny, a íife estate, to be en-lar§ed t0 a ^ee uPon the birth of issue, but a fee, defeasible in the event of her dying without performing the condition annexed to it.
A question is raised whether the remainder given t.o the issue of Zulina in the personalty is not to be regarded.as a personal benefit conferred on her by her father, falling within the inhibitions of the Statute of 1795. in Bradley v. Lowry, where a father gave a slave and a tract of land to the husband of his natural daughter, it was held to be a benefit conferred upon the daughter, within the meaning of this Act, because the evident design was to confer a benefit on her, through her husband, in evasion of the Statute. In that case the benefit was direct, because of the unity of the husband and wife. Nothing could be given to the one without the enjoyment of the other. We feel great difficulty, however, in following that decision here. The argument is that by providing for Zulina’s children, her father exonerated her, to the extent of that provision, from the duty and burden of providing for them. But, if we should take into consideration bounties of this remote description, we should entangle ourselves in extricable difficulties in the application of the Statute, and rve deem it safer to hold that the interests of the children of *193 Zulina, who take as purchasers, distinctly from their mother, and not through her, or in connexion with her, shall not be regarded as a gift to her.
M. S.
iRi0h.Eq465’
Bail. E<j,-39'7
We come now to the most subtle question in the case. Ann Hull, the mistress, whose legacies have been supported, contends that after applying and exhausting- the intestate property in the payment of the testator’s debts, “ the balance' of the debts should be paid out of the property ineffectually devised and bequeathed to Zulina,” and that the bequests^to’ Ann Hull should not be required to contribute to the payment of debts “until the whole excess beyond one-fourth, or ineffectual gift to Zulina, shall have been exhausted.”
It is contended that the Act of 1795 is to be applied to the property given to Zulina, in the first instance, and that her legacies are to be vacated to the extent that they exceed in value one fourth of the whole estate after deducting the debts in gross: and that this excess is then to be regarded as in-_ testate property, and applied to the debts, in exoneration of Ann Hull’s legacies, which, in respect to intestate property, is only secondarily liable. But we are 01 opinion that this would invert the proper order of proceeding. It was long ago determined, in Owens v. Owens, that the will of a testator, in favor of his bastards or mistress, was a good and valid will as to all the world except his lawful wife and children: and so far has this doctrine been carried that, in Breitkaupt v. Bauskett, it was held by Chancellor Harper, that the election to avoid it was so completely personal to these parties, that the privilege expired with the life of the wife, and could not be exercised by her executor.
The instrument is not void but voidable; and as to all persons taking by the will, the estate is to be administered under the will, as if there were no such thing as the Statute of 1795. The rule for the payment of debts, as laid down in Warley v. Warley, is to be applied until the clear value of the lega-1 cies and devises is established and then the Act of 1795 is to be applied, at the instance, and for the benefit, of the lawful wife and children, for the vacation of so much as has resulted in legacies to the mistress or bastards, beyond one fourth of the clear value of the whole estate. There can be no difference in principle, whether parties entitled to take advantage of the Act of 1795, make their application for that purpose before or after the debts are paid and the legatees put in possession of their legacies, nor should the results be' different. If the lawful wife or children should be ignoiant of the facts until the administration is closed, and should then discover that the spurious family, one or more, are in possession of a clear estate, exceeding one fourth of the clear estate of the ancestor, they have a right to make their case against them, without calling in the executor or other legatees. They *194 have nothing to do with the administration in such a case, uor can t]-ie administration affect their rights, one way or 'another. Nor can their obtaining a decree for the excess to which they are entitled, authorise any legatee, specific or other, whose legacies have been partially or wholly applied to debts of the testator, to callupou them for contribution out of their recovery, as intestate property ; and thus subject the estate to a second administration. Their reply t©- such an application would be that what they had recovered was recovered from a legatee who, from the relations subsisting among those claiming under the will, was entitled to it as against every other legatee: that they recovered it by a superior right, from a party holding by a better right than the party now demanding it from them; that their recovery had not rendered their acquisition intestate property ; on the contrary, they had recovered it from one in whose hands it was testate, and because it was given to him as testate; and that although they had avoided his legacy, the property was in their hands, as it was in his, testate properly as to every party taking under the will.
i Speer’sEq i. F
If the lawful wife and children come into Court while the administration is still pending, they must make the executor a paity to the suit: but this is not to change the course of administration, the purpose being to conduct the administration to the proper conclusions under the will, and to ascertain the property resulting under the will to that party against whom their claim is really to he made.
The question might be very properly put to Mrs. Ann Hull, why her rights under this will are to be increased in consequence of the claim made by the lawful children upon her daughter. If they had never made their claim, she would have had' no right to contribution out of the property indicated by her ground of appeal.. As their claim does not prejxit-dice her, it is not percived why she should take any benefit from it.
If her ground were sustained, the adjudication would pre,-sent this strange absurdity, that she would take from the plaintiffs what they obtain by a superior right from Zulina, and then in her hands it wotdd be reclaimable by Zuliua by a better right than hers : and thus the adjudication mustpro^ ceed continually in a circle.
The last question is whether the excess to be recovered by the plaintiffs is to be set off to them by partition, or to be accounted fore# debito,, and this is a question of n.o little difficulty.
In Bradley v. Lowry, this question was reserved. In that; 'case l incliued to the opinion that the excess should not be accounted for, but taken off by the process of partition; because, as 1 then read the Statute, it made the title of the *195 donee good for a part and void for the residue; which seemed to infer that there was a community of title in the donee and the lawful family of the donor, according to their respective interests. I have carefully reviewed the statute, and I now doubt that opinion. Insuperable difficulties would arise from holding that in all cases there was an absolute right to claim partition. In many cases it would be impracticable. Suppose; for example, specific gifts were made to each of 20 bastaid children, with cross remainders among them. Other examples might be given, little less embarrassing, but this will suffice.
On the other hand, as I have said in my circuit decree in this case, the terms of the statute do, in a great measure, point to compensation for the excess, and I very much doubt whether if the whole of an estate were bequeathed to a bastard on condition that he account to the lawful family for three fourths of its clear value, such a will must not be specifically executed by the Court, as conforming to the Statute.
But even under the construction that the statute requires nothing but a restoration of the excess in value, when this can conveniently be done by partition, that process might be adopted.
Our conclusion is that nothing can be definitively ordered on this point until the property in the hands of Zulma is ascertained, and how much it exceeds in clear value one fourth of the estate.
It is ordered that the decrees be modified in conformity to this opinion; and that the Commissioner do ascertain and report,
1st. The gross value of the estate.
2d. The aggregate amount of the debts.
3d. The value and description of the different devises and bequests.
4th. The sums chargeable to the same in a due course of administration.
5 th. The nett value oí the different devises and bequests to Zulina.
6th. The exeess received by her over one fourth of the testator’s estate, clear of debts.
7th. The rents and profits; and
8th. Any speceial matter; including a statement of what the plaintiffs are entitled to.
The defendants to pay the costs not heretofore provided for.
Donkin, Ch. and Daegan, Ch. .concurred.

Decrees modified.